ELLIS, Judge. -
Defendant has appealed from a judgment in favor of the plaintiff in which the latter was awarded compensation for total and permanent disability at the rate of $30 per week during the period of plaintiff’s disability not to exceed 400 weeks, less the number of weeks previously paid, and judgment in favor of defendant deny *107 ing plaintiff’s claim for attorney fees and damages. The defendant is seeking a reversal of the judgment of the District Court on the following grounds as stated in its brief:
“As was pointed out by the District Judge in his reasons for judgment, the transcript had not been completed, and the note of evidence had not been transcribed at the time that he rendered his decision (Transcript page 156). It is respectfully submitted that a careful consideration of the entire record which has been made up in this case, including the entire note of evidence, shows that there is no substantial conflict in the medical testimony, which greatly preponderates to the effect that the plaintiff is suffering no disability as a result of any accident which may have occurred in the course of employment. We respectfully direct the attention of this Court to the testimony of the doctors who testified as we believe that a careful consideration thereof will demonstrate the error-of the District Judge in the conclusions which he reached. In the second place, we believe that there is serious question as to whether any accident occurred in the course of employment, and that the plaintiff has failed to sustain the burden of proof which was imposed upon him in that regard.
“The' jurisprudence is apparently well settled to the effect that where an analysis of the medical testimony indicates that ‘there is no irreconcilable conflict in the medical testimony’, the testimony of lay witnesses shall not be considered, and if that testimony is contrary to the plaintiff’s case, he cannot recover.
“Carter v. Consolidated Underwriters [La.App.], 62 So.2d 682 [684] (Second Circuit 1953) :
“ ‘We next come to the question of the duration of plaintiff’s disability. Analysis of the medical testimony indicates that there is no substantial degree of conflict in the testimony of the medical experts. It is well established that where there is no irreconcilable conflict in medical testimony the testimony of lay witnesses will not be considered. Sellers v. T. J. Moss Tie Co., La.App., 56 So.2d 878 (writs refused April 28, 1952); Maricelli v. Standard Accident Insurance Co., La.App., 57 So.2d 926.’
“Waldrup v. Consolidated Underwriters [La.App.], 64 So.2d 468 [469]:
“ ‘To establish injury and continuing disability plaintiff called several lay witnesses whose testimony disclosed only subjective conditions observed by them in plaintiff’s conduct. However, inasmuch as there is no conflict in the medical testimony, we are not justified in accepting lay testimony in' a case of this kind. See: Maricelli v. Standard Accident Insurance Company, La.App., 1952, 57 So.2d 926; Sellers v. T. J. Moss Tie Company, La.App., 1952, 56 So.2d 878; Fee v. Travelers Insurance Co., La.App., 1940, 193 So. 381.
“ ‘We are of the opinion that plaintiff has failed to present adequate proof of a compensable disability under the act which prescribes that our findings of fact be based upon competent evidence, and a compensation award made only for such injuries as are proven by competent evidence.’ ”
The District Judge in his written reasons stated that the transcript had not yet been transcribed, however, the testimony of Dr. Karr, who could be termed the main medical witness of the defendant, and that of Dr. Schneider, who was the main medical witness for the plaintiff, was in the record and their testimony is quoted and referred to in the opinion of the able District Judge.
We have carefully read and considered the record and briefs filed in this case and cannot agree with counsel for the defendant in his statement that there is no substantial conflict in the medical testimony, for Dr. Karr, who operated upon the plaintiff for *108 his herniated disc positively testified that the operation was successful and that plaintiff was no longer disabled and could return to work, whereas Dr. Schneider was of the positive opinion that the plaintiff showed “definite indications of nerve-root irritations- involving the right lower extremity and this is undoubtedly due to the residual adhesion .about the lower lumbar roots, plus the further extrusion of the pulposus at the level of the previous surgery performed” and further testified, “I feel that there is a definite possibility that a segment of the nucleus pulposus, which might possibly have been retained at the time of the surgery, may have worked loose and- extruded at the site of the previous herniation.” Dr. Meuleman agreed with Dr. Karr, however, there is a definite conflict in the medical testimony as found by the District Court. We do not mean by this necessarily to indicate approval of the proposition of- law advanced by defendants, for there might be instances where credible lay testimony may prove preponderantly what medical opinion testimony indicates to be a mere possibility.
As to the second contention that there is a serious question as to whether any accident occurred in the course of employment and that the plaintiff has failed to sustain the burden of proof which was imposed upon him in that regard, we find that the Lower Court has correctly evaluated the testimony even though the transcript on this point was not complete, and he correctly held that the .plaintiff had proven an accident within the contemplation o-f the .compensation law. In view of the fact that the able District Judge has written an extensive opinion and correctly interpreted the facts and the law applicable thereto, we herewith adopt his opinion in this case.
“This action is brought by Cyrus Champagne to recover workmen’s compensation for total and permanent 'disability as a result of- an injury he claims to have sustained on December 23,-1953 in the course of his employment with the Abshier Construction Company. He- claims to have suffered the rupture of -a vertebral disc while-lifting four-inch pipes to load them onto a truck.
“On the day of the alleged injury Champagne reported for work at the Anse La Butte oil field- in St. Martin Parish at about 7:30 o’clock in the morning. At about 10:00 o’clock, while lifting one of the pipes with several of his fellow employees he claims to have felt a warm sensation in the lower portion of his back. He did not mention it to his fellow workers as he thought that the sensation would soon disappear. At noon he drove his employer’s truck to Breaux Bridge, a distance of four or five miles, where he and his coworkers live. He brought each of them to their respective homes and then went to his own. On his way in the truck he claims to have begun suffering pain and that by the time he reached home the pain was severe. It was so severe that he did not eat his noonday meal, but promptly visited Dr. Ernest Yongue and notified his foreman of his injury.
“Dr. Yongue, with the assistance of X-rays diagnosed Champagne’s injury as a ruptured disc. He prescribed the customary treatment and when the patient failed to respond to it, Dr. Yongue referred Champagne to Dr. William L. Meuleman of Lafayette, an orthopedist. Dr. Meuleman attempted further conservative treatment without success and on April 1, 1954 the doctor referred Champagne to Dr. Howard Karr of New Orleans, a neurosurgeon. On April 2, 1954 Dr. Karr performed the operation upon Champagne that is customary in such cases. According to Dr. Karr the patient made normal recovery and in the following July he released him as completely cured and physically able to return to work.
“Champagne did not return to work, however. He claims to still suffer pain in his right leg, thigh, and hip. The only beneficial effect that he admits the operation brought is a decrease of the pain in his back. Dr. Meuleman examined Champagne after he was released by Dr. Karr and concurs, in Dr. Karr’s opinion that the opera- *109 lion was successful sand'that, the patient has fully recovered and is able-to resume his employment.
“Champagne employed Dr. George P. Schneider, Jr. of Lake Charles to examine him and was twice examined by this orthopedic surgeon. The first examination was conducted on July 29, 1954 and the second on November 11, 1954. This surgeon does not concur in the opinions of the two other doctors. He believes that ■Champagne is still disabled as he suffers too much pain to follow his customary employment of common laborer. This doctor ■saw no improvement in the patient between the two examinations and is of the opinion that Champagne’s present pain is caused hy extrusion of portions of the vertebral disc since the operation, that bear against ■nerve roots, plus adhesions around the ■nerve roots.
“Many of Champagne’s neighbors and his superiors where he worked testified that he enjoys an excellent reputation for industriousness, peace, truth and veracity.
“The plaintiff is a married man and lives ■with his wife and their children. I do not recall how many children they testified they had but it is my impression that there are four or five (The note of evidence is not jyet transcribed).
“The Abshier Construction Company had ■compensation insurance with the Houston Fire and Casualty Insurance Company. This company is the defendant and ,has joined issue with plaintiff on two points. It denies that Champagne received ,the accident and that he is disabled.
“We-encounter no difficulty in' settling the “first point. There can be no dispute that ■Champagne had a ruptured ■ disc at the noon hour on the day he claims to have "been injured. 'It is likewise obvious that he was not- suffering with this disability ■that morning when he reported.-for work. There is no testimony that could even remotely lead to the assumption that he ■could have been injured elsewhere or in .any other manner than in- that which he claims. ' ■ ■
“The second issue is pot as-easy.to settle. We are confronted with conflicting testimony.
“Doctors Karr and Meulenian who testified that the operation was a success and that, plaintiff does not suffer the pains he complains of are .prominent physicians and, their testimony should, not be taken lightly. However, Dr. -Schneider, a qualified orthopedist, disagrees with them.
“It is common to find disagreement among medical experts -in cases - involving back injuries. This is so, evidently, because injuries of the- .back often involve muscles and nerve roots whose injuries do not show on X-ray films. The muscles of the back are employed in practically every significant movement of the body, so when their activity is impaired, great disability results. So it is with the nerve roots found in the back. These 'nerve centers control the functions of the nerves in the lower extremities. An injury to the roots résponds in that part of the body. An impairment of the use of the legs results in serious physical disability.
“The two-.main symptoms of nerve injury are pain and loss of sensitivity, - That Champagne has lost sensitivity to pin prick in the lower portion of his body is not disputed.
“Dr. Meuleman testified in considerable detail as to the steps and results of''the examination he made of Champagne after the operation. The main reason he assigns for concluding that Champagne does not suffer pain is because Champagne had no muscle spasm when the affected parts of his, body were moved. It is an accepted medical fact'that muscles involuntarily go into spasm when an injured part of the body is disturbed in a manner that will produce' pain. It is nature’s way of, protecting an- injury.
“The test does not seem to be infallible, however. The'amount of'pain necessary fo:[produce muscle spasm may vary.in individuals. Then again, continued use of a member, as is necessaiy, when working, may produce pain, while -limited us'e,;,such *110 as undergoing physical examination, may not. ‘
“Dr. Karr last saw plaintiff in July 1954. But he does not give us the benefit of describing his examination of plaintiff and the detailed result thereof, as did .Dr. Schneider. He merely gives us the overall statement that his operation was a success and that plaintiff has no further disability. It is unfortunate that the facts he used to reach his conclusion are lacking.
“In evaluating the doctor’s testimony we should consider his attitude toward compensation claimants. At page 15 of his testimony he spoke as follows:
“A. By the obliteration of the objective physical findings primarily, as well as the abolition of the complaints. I mean, both have to be considered. Of course, I would like to say at this point that no. consideration should be given to categorizing any patient as a proper guide for disc operations if that patient is involved in any litigation, and I say that and.I have very strong feelings about it. First of all, I don’t feel that patients who'have a lawsuit pending can be treated successfully by any one, and, secondly, those patients who, subsequent to treatment, undergo a lawsuit, I don’t feel that their complaints can be regarded in the same light that one normally encounters with a private patient. I mean, that is a general rule. I don’t speak specifically about Cyrus Champagne, but I personally refuse to treat any patient who comes in, even with classical clinical findings, if he tells me that he has a lawsuit. I will agree to treat him, however, after he settles his lawsuit.”
“From this statement we may glean the possibility that Dr. Karr is not sympathetic toward patients who resort to court for the collection of compensation.
“Another passage of his testimony which may assist us in assessing his evidence is his statement at page 36 in response to the following question:
“Q. But you are not able to state that the man asked to return to his original job? A. This man simply took the position that now he had been hurt, he ought to receive in effect a purple heart; that is what it amounted to. I don’t mean that facetiously, but that he felt that he was entitled to a little consideration. I said that, as far as I am concerned, I would relay that in as nice language as I could, which I. did.”
“The reason the doctor reached this conclusion is because Champagne had asked him if he could go to work and if the doctor could give him a written statement to help him get the job of foreman or pusher.
“Of course, that Champagne wanted to be rewarded for his injury could possibly be one of the motives he had in seeking the promotion. There is, also, the possibility that he felt physically unable to return to heavy manual labor and if he could be placed in the supervisory position, where he would not have to do this heavy labor, he could return to work sooner and recuperate better. That possibility did not seem to occur to Dr. Karr even though it seems more logical than the conclusion he reached, in view of Champagne’s character,' stability and record for industriousness.
“These manifestations of his attitude minimize the weight of Dr. Karr’s conclusions.
“Dr. George P. Schneider, Jr. employed mostly technical, medical terms in the giving of his testimony. As I understand it, however, he said that he had discovered certain areas of plaintiff’s lower back and right leg that were not sensitive to pin pricks and that certain movements of plaintiff’s hip and leg caused pain. He also discovered certain sensitive areas. From these he concluded that there was the possibility, and perhaps the probability, that the movement of certain parts of one of plaintiff’s vertebral discs compressed the nerve root and that there was adhesion between the nerve root and scar tissue. X-rays also showed the possibility of this condition.
*111 ''Between the examination' in July and the one in November the doctor found ,an atrophy of a quarter-inch in plaintiff’s right thigh and calf. This generally indicates lack of use of the muscles of. these members. . , , ,
“Dr. • Schneider recommends that ari X-ray opaque fluid be introduced into the nerve canal and X-rays made. This would determine the point affected. He stated, however, that this procedure should not be taken unless surgery is contemplated.
"Plaintiff complains of constant pain. His testimony, that of his wife, and his neighbors establish the fact that he mostly remains at home, frequently in bed. He claims that lying in bed reduces his pain considerably. When he is not in bed he sits in a chair with his leg extended oil another chair. He takes no physical exercise and visits his neighbors only rarely and then those who live close to him. He seldom walks. He goes to church but does not follow the ceremony by kneeling and standing. He has never .refused to work. He enjoys the esteem of the community.
“The circumstances of this case present a typical case for the application of the doctrine that our Workmen’s Compensation Act [LSA-R.S. 23:1021 et seq.] should be construed favorably to the employee. If we deny him recovery we shut the door on him and deprive him forever of the benefits of the Workmen’s Compensation Act. If future examination and treatment further confirm the fact that he is disabled, a grave injustice will have been done him.
“On the other hand, if we allow him to •recover compensation he is amenable to periodic examinations and if he recovers, the payment of compensation can be discontinued. It is most unlikely that plaintiff is a malingerer. Certainly, he does not appear to be'the type that would be satisfied to raise his .family on compensation payments if he, is ^ble to work and earn many times more.
“In addition, to the recovery of compensation plaintiff seeks the sum of $1,000 as attorney’s fees and 12% damages as well as $1,000 for medical expenses. The circumstances of the case do not justify the assessment of attorney’s fees and penalties against the defendant. The defendant, at the time it terminated the payment of compensation, was in the possession of statements from Doctors Karr and Meuleman certifying that plaintiff suffered no disability". Certainly, that is justification for stopping the , payment of compensation.
“On his medical claim the plaintiff is entitled to recover only for such medical expenses as he has incurred. I do not recall that he introduced any evidence in support of this claim. But if he has presented this evidence he is entitled to recover therefor.
“It is not disputed that Champagne’s wages were sufficient to allow him to recover compensation at the maximum rate.
“Therefore, let there be judgment in favor of the plaintiff and against the defendant for compensation payments at the rate of $30 per week during the period of plaintiff’s disability, not to exceed four hundred weeks, less the number of weeks heretofore paid for and disallowing plaintiff’s claim for attorney’s fees and damages'; allowing him to’ recover the medical expenses he has established, if any; at defendant’s costs.”
For the aboye reasons the judgment of the District Court is affirmed.